Billie Harmon STORMS, Appellant
(Defendant below),

v.

The STATE of Wyoming, Appellee
(Plaintiff below).

No. 4952.

Supreme Court of Wyoming.

Feb. 28, 1979.

W. Keith Goody, Jackson, for appellant.

John J. Rooney, Acting Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Richard H. Honaker, Asst. Atty. Gen., Cheyenne, Henry F. Schlueter, Student Intern, and Donald Terry Rogers, County and Pros. Atty., Teton County, Jackson, for appellee.

Before RAPER, C. J., McCLINTOCK, THOMAS and ROSE, JJ., and GUTHRIE, J., Retired.*

GUTHRIE, Justice, Retired.

Appellant feels put upon and seeks relief from his conviction of the charge of interference with a police officer in the lawful performance of his duties [1] and a sentence for such crime.

Around midnight on August 22, 1977 Terry Bohlig, a member of the Jackson Police Department, was driving home in his pickup along Broadway in that city. From the street while driving along Bohlig saw Storms' pickup parked in the parking lot adjacent to the Tumbleweed Restaurant which was operated by the said appellant Storms. On August 18 the police department had received a memorandum from John (Corky) Moyer, the County Sanitarian, suggesting that there was a possible violation of the sanitation laws which was taking place upon the premises of the Tumbleweed Restaurant, and Bohlig was aware of such report. At this point Bohlig drove into the parking lot where he had seen the pickup and saw a pump and pipe which was extended from it with a discharge flowing therefrom. It appears that because of the heavy rains defendant was having some difficulty with the leach field into which his septic tank drained and he sought to correct this problem by pumping the liquid from the leach field on some adjoining property which he was engaged in doing when Bohlig came along. He went to the front of

---

* At the time of oral argument Guthrie, J., was Chief Justice. He retired from the court on December 31, 1978. By order of the court entered on January 1, 1979 he has been retained in active judicial service pursuant to § 5, Art. V, Wyoming Constitution and § 5–1– 106(f), W.S.1977, and has continued to participate in the decision and opinion of the court in this case.

1. Section 6–183.1, W.S.1957, 1975 Cum.Supp., now § 6–8–602, W.S.1977.

the building where there was a door and light; when he knocked the defendant came to the door. At that time Bohlig was not in uniform and was not wearing his badge. Although Bohlig had seen him before and had some dealing with this defendant as a police officer, he advised appellant of his name and that he was such police officer but that he was without identification, that he would return to see what this operation was all about after he got his identification and that if it were what he thought it was he would close him down by morning. He did nothing further, but as he left Storms advised him that when he returned he had "better have a search warrant."

Bohlig went on into his trailer where he got his identification and a jar or container for use in taking a sample of the discharge. On his return he pulled behind an adjoining filling station and parked his vehicle. He went then to a point where the pipe was discharging fluid and got a sample. With this he went to the police station and called Corky Moyer, who asked that he investigate this apparent violation and to get a sample and a picture of the operation. Bohlig then returned to the scene where he called another officer, Sergeant Laker. They met near an adjacent motel and when Laker came he advised him of the situation and of Moyer's request. They left the car and approached the lot to take pictures of the pump, the pipe and the truck. About the time they reached the pickup Storms came from the building and approached them. He asked what they were doing upon his property. This conversation was directed at Laker who told him of the intention to take pictures of the violation. Defendant demanded to see a search warrant. Laker tried to explain to him his view that this was a public place and that a search warrant was not required. Storms then ordered them off his premises. Laker told Bohlig to go right ahead and take the pictures. Storms became excited and apparently was shouting, and when Bohlig stepped forward a step or two to get closer to the truck and raised his camera Storms

came around and with his left hand knocked the camera into his face, knocking off his glasses. He hit the camera with some force. Laker then knocked Storms back and restrained him with a bear hug. He was then handcuffed, arrested and taken to the police station. The investigation was to determine if there was a possible violation of the sanitary law resulting from the dumping of sewage into Flat Creek or the Flat Creek area.[2]

In seeking a reversal appellant asserts the trial court was in error in finding the "officers were in lawful performance of their duties when the interference took place and that no search warrant was required when the officers came onto the defendant's real property to take pictures." As a further basis he charges it was error for the trial judge to have refused to give an instruction upon the law of search and seizure. In his brief appellant rests his position upon the theory that the officers were trespassing; that the search (which he styles the entry) was within the curtilage and that the "open fields" doctrine cannot apply. He further denies that the "plain view" doctrine could apply because the officers did not know that a crime had been committed but were merely investigating a possible violation.

We will not consider appellant's assertion of error for failure to give an instruction to the jury upon the law of search and seizure. There is a question whether the record properly preserved this question for consideration. There is no reason for further discussion of that question however, because the sole authority cited for such proposition is the general statement in Rule 31, W.R.Cr.P. and Rule 51, W.R.C.P. making it the duty of the court to instruct the jury on the law of the case. An appellant cannot in this manner place the entire burden of research and argument upon the court and it need not be considered. *Connor v. State,* Wyo., 537 P.2d 715, 719, and authorities cited; *Otte v. State,* Wyo., 563 P.2d 1361, 1363. As is apparent, the scope of this appeal is rather narrow. It is confined to the sole issue as expressed by appellant:

2. Section 35-10-101, W.S.1977.

"The court erred when it ruled at the close of the State of Wyoming's case that the police officers were in the lawful performance of their duties when the interference took place and that no search warrant was required when the officers came onto the defendant's real property to take pictures."

In pursuit of his appeal appellant cites authority that when an officer is acting without his legal authority, i. e. in conducting an unlawful search, that one opposing him is not guilty of obstructing an officer. This is a clearly sustainable position under our statutes and the case law and the State makes no issue upon this point. Appellant alleges that they were trespassers and bases this upon a claim of reasonable expectation of privacy with regard to these premises.

■ Without citation of any authority appellant labels these officers as trespassers. If an officer goes upon private premises in the performance of a duty and is investigating a criminal complaint he is not a trespasser. *State v. Van Rees,* Iowa, 246 N.W.2d 339, 343, which contains a wealth of cited authority. As a matter of fact it is the duty of a police officer to investigate possible violation of law.

■ There are certain general and recognized principles covering the entry of enforcement officers upon business premises for the purposes of inspection and enforcement of safety or sanitary regulations. These are clearly discussed and defined in these cases: *Camara v. Municipal Court of City and County of San Francisco,* 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930; *See v. City of Seattle,* 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943; and *Air Pollution Variance Board of Colorado v. Western Alfalfa Corp.,* 416 U.S. 861, 94 S.Ct. 2114, 40 L.Ed.2d 607. The most recent case is *Marshall, Secretary of Labor v. Barlow's, Inc.,* (1978), 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305. *Camara, See* and *Marshall,* supra, recognize that work areas or enclosed premises are covered and protected by the Fourth Amendment and cannot be the subject of warrantless searches for these purposes. However, *Air Pollution Variance Board of Colorado,* su-

pra, holds that it is not violative of the Fourth Amendment for an inspector who viewed plumes of smoke to enter and make tests upon these premises. This opinion specifically rejects the application of *Camara* and *See,* supra, as to premises not enclosed or within the immediate work area and reasserts the continued viability of the "open fields" exception upon which doctrine this holding is based. It would appear that this authority might be employed in disposal of the instant case, if it were not for the applicability of the "reasonable expectancy of privacy" test upon which appellant rests his position.

In *Croker v. State,* Wyo., 477 P.2d 122, 125 this court recognized when considering the propriety of a search that a party had only "a reasonable expectancy of privacy," which we deem applicable herein. It is inconsistent to insist that any activity conducted upon an open parking area supplied for the public use and in full view of a public street and all who pass that way could see could be protected by such doctrine.

There appears a clear answer in *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 when the Court said, "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." The rule of these cases is cited and relied upon in *People v. Berutko,* 71 Cal.2d 84, 77 Cal.Rptr. 217, 453 P.2d 721, 726; *People v. Ortega,* 175 Colo. 136, 485 P.2d 894, 896. It is clear that this record is entirely devoid of any evidence from which an inference of reasonable expectation of privacy could arise.

The judgment is affirmed.