**J. D. VROOMAN, Appellant**
**(Appellant-Defendant),**

v.

**The STATE of Wyoming, Appellee**
**(Appellee-Plaintiff).**

No. 5610.

Supreme Court of Wyoming.

March 26, 1982.

Timothy J. Bommer, Jackson, for appellant.

Steven F. Freudenthal, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Criminal Division, Cheyenne, and D. Terry Rogers, appointed Sp. Asst. Atty. Gen., Jackson, for appellee.

Before ROSE, C.J., and RAPER, THOMAS, ROONEY and BROWN, JJ.

BROWN, Justice.

Mr. Vrooman appeals from a conviction for driving while under the influence of intoxicating liquor (DWUI) in violation of § 31–5–233(a), W.S.1977.

Appellant was convicted in the justice of the peace court and his conviction was affirmed by the district court.

Appellant urges four issues:

"I. Whether the Justice Court erred in finding that there was probable cause for the arrest of the Appellant and as such erred in admitting into evidence the highway patrolman's observations of Appellant, statements made by Appellant, and the results of the breath test administered to Appellant.

"II. Whether the Justice Court erred in admitting into evidence the tape recorded statement of Appellant despite Appellant's refusal to give a statement and his requests that counsel be present during questioning, both of which the arresting officer ignored.

"III. Whether the Justice Court erred in admitting into evidence the results of the breath test which was conducted after an improper advisement of Appellant's rights under the implied consent law of the State.

"IV. Whether the District Court erred in finding that the Wyoming Rules of Appellate Procedure were inapplicable to Appellant's appeal from Justice Court to the District Court."

We will affirm.

On June 12, 1979, appellant was driving southbound on Highway 26 in Grand Teton National Park. He was stopped by Highway Patrolman David Schofield (Schofield), who was patrolling north. Schofield observed two vehicles approaching him in the southbound lane. The first vehicle was a blue van; the second, appellant's vehicle, was approximately one-quarter mile behind the blue van. Schofield observed his radar gun reading between 57 miles per hour and 83 miles per hour. He thought, however, that the blue van was traveling close to the speed limit, while appellant's vehicle was exceeding the speed limit. When appellant's vehicle was about a quarter of a mile away from the patrol car, it slowed down drastically.

After citing appellant for speeding,[1] Schofield smelled a strong odor of alcoholic beverage and then submitted appellant to a field test unit called an "Alcosensor." Appellant failed this test; Schofield then administered field sobriety tests. He testified that because of a combination of the alcosensor test, the smell of alcohol, and appellant's failure of field sobriety tests, he determined that there was probable cause to arrest appellant for driving while under the influence of alcohol.

Appellant was then arrested and placed in Schofield's patrol car for transportation to Jackson, Wyoming, during which time Schofield tape recorded his conversation with appellant. Before that time Schofield had advised appellant of his *Miranda* rights, and appellant had refused to give a state-

1. The citation for speeding was dismissed by the State in the justice of the peace court.

ment. While being transported to Jackson, Schofield asked Vrooman to take a breathalyzer test.

Schofield advised appellant of the implied consent law, after which appellant consented to take the breathalyzer test. The breathalyzer test showed appellant's blood alcohol level to be 0.11% at the time he was stopped for speeding.[2]

## I

Appellant asserts that the highway patrolman did not have probable cause to stop him for speeding. He argues that any evidence that appellant was driving while under the influence of alcohol arose from the initial, illegal stop for speeding and therefore should have been suppressed.[3] We do not agree.

■ We must initially determine whether the highway patrolman had probable cause to stop appellant for speeding. There was considerable testimony at trial concerning the reliability of the radar. There was testimony regarding Schofield's training and experience in the use of radar, as well as testimony regarding testing and calibration of the radar unit involved. Through effective cross-examination of the State's witnesses, appellant was able to cast some doubt on the accuracy of the radar clocking. However, the testimony about the accuracy of the radar clocking obscures the initial issue. While the accuracy of a radar clocking may be determinative of appellant's guilt or innocence of speeding, it does not determine whether there was probable cause to stop appellant for speeding. In addition to the radar clocking showing excessive speed, the highway patrolman observed appellant drastically reduce his speed when the patrol car could be seen by appellant. Also, the highway patrolman observed the front of appellant's vehicle dip. A combination of these circumstances certainly constituted probable cause to stop appellant for speeding.

■ A court must generally determine whether there was probable cause for a warrantless arrest by using a standard of reasonableness, viewed with practicality and applied with good sense. *Raigosa v. State*, Wyo., 562 P.2d 1009 (1977). Furthermore, a court must consider the facts and circumstances known to the officer which would lead a reasonably cautious and prudent man to believe that the person to be arrested has committed a crime. *Neilson v. State*, Wyo., 599 P.2d 1326 (1979); and *DeHerrera v. State*, Wyo., 589 P.2d 845 (1979). Stopping appellant for speeding was not a "sham" or a pretext for a warrantless search suggested by appellant but was based on probable cause.

■ Having determined that the highway patrolman had probable cause to stop appellant and cite him for speeding, we have no problem with finding probable cause for appellant's arrest for driving while under the influence of alcohol. The officer initially detected excessive speed and erratic driving. After issuing the speeding citation, the officer detected a strong odor of alcohol on appellant. Appellant's balance was unsteady, his face was flushed, and his speech was slurred. Appellant failed the field sobriety test. Appellant could not put his finger to his nose, could not recite the alphabet, and could not count to four with his fingers. Schofield would have been remiss in his duties had he not arrested appellant for driving while under the influence of alcohol.

## II

■ Schofield had a small portable cassette recorder in his patrol car, which he placed on top of the console where appellant could see it. He started the recorder shortly after he got back into the vehicle,

2. § 31–5–233(b)(iii), W.S.1977:
 "If there was at that time ten one-hundredths of one percent (0.10%) or more by weight of alcohol in the person's blood, it shall be presumed that the person was under the influence of intoxicating liquor, to a degree which renders him incapable of safely driving a motor vehicle;"

3. Appellant made a timely suppression motion which was determined adversely to him.

and recorded all conversation with appellant, who was aware that the conversation was being recorded. The tape was stopped during periods of silence. Schofield made the recording while he drove appellant from the scene to the courthouse. Appellant was advised of his *Miranda* rights, which he indicated that he understood. Appellant made no admissions on the tape. Schofield did not threaten or coerce him in any way.

The tape which Schofield identified as being a true and accurate recording contains no evidence of interrogation or questioning by officer Schofield. It provides evidence of the conversation with appellant and indicates that Schofield informed appellant of the implied consent law, and illustrated appellant's quality of speech and general demeanor.

The justice of the peace admitted the tape into evidence "* * * for the officer advising Mr. Vrooman of his rights under the implied consent law; for the quality of Mr. Vrooman's voice, and for the Court to assess his reasoning process and/or whether he is rambling." Before finding guilt, the justice of the peace stated: "The Court will reflect that it is influenced very much by the quality of the tape and the voice on the tape."

Appellant contends that the conversation after he said he wanted an attorney should have been suppressed. Appellant cites *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966), reh. denied 385 U.S. 890, 87 S.Ct. 11, 17 L.Ed.2d 121; and *Dryden v. State*, Wyo., 535 P.2d 483 (1975), to support his position.

*Miranda* says that while a defendant is in custody he cannot be interrogated against his will, and that any confession resulting from such interrogation is inadmissible. *Miranda* does not apply here, because appellant made no confession. There was also no interrogation under the definition provided in *Rhode Island v. Innis*, 446 U.S. 291, 300, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297, 308 (1980):

"* * * 'Interrogation,' as conceptualized in the *Miranda* opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself.

"We conclude that the *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police. * * *"

*Dryden v. State* held that after a defendant indicated that he wanted an attorney "the county authorities could not thereafter enter into other interrogation unless and until the defendant had himself reopened the subject." 535 P.2d at 493.

Neither the mandates of *Miranda* nor *Dryden* were violated here. The highway patrolman did not solicit a confession or admission, nor were any made. The appellant was not interrogated after he indicated that he wanted a lawyer. The only conversation was the highway patrolman's advising appellant of the implied consent law and other normal conversation. The tape demonstrated to the justice of the peace the quality of appellant's speech and his general demeanor. It contained only matters that the highway patrolman could properly testify to at trial. The tape gave the justice of the peace direct information rather than the highway patrolman's characterization and impressions.

It is well established that sound recordings are admissible in criminal actions where the recording is relevant and material, and a proper foundation is laid. *State v. Warwick*, Mont., 494 P.2d 627 (1972). A proper foundation was laid by the State, and the recording may thus be considered as direct evidence subject to the same admissibility as eyewitness testimony. *State v. Bassett*, Mont., 614 P.2d 1054 (1980). Admissibility after a proper foundation has

been laid, rests within the sound discretion of the trial court. *Peterson v. State*, Wyo., 586 P.2d 144 (1978). We hold that the trial judge did not abuse his discretion by admitting the tape into evidence.

### III

After appellant's arrest for driving while under the influence of alcohol, Schofield asked him several times to take a breath test. The highway patrolman attempted to explain to appellant the implied consent law as follows:

"OFFICER SCHOFIELD: Okay, sir, under the Implied Consent Law of the State of Wyoming—

"MR. VROOMAN: I already know that.

"OFFICER SCHOFIELD: Okay. You are under arrest for driving under the influence—

"MR. VROOMAN: Okay.

"OFFICER SCHOFIELD: —of alcohol. Under the Implied Consent Law of the State of Wyoming, I am requesting that you take a chemical test to determine the degree of your intoxication. I request that you take a breath type test at the Sheriff's Office in Jackson. At your option and at your expense, you may have a blood test taken at the hospital. Okay? "Your refusal to take this chemical test may result in your driving privileges being suspended for 30 days, regardless of whether you are convicted of the charge of D.W.U.I. If you are convicted, and you refuse this test, the suspension will be in addition to the driving under the influence suspension.

"So what happens is, I am requesting that you take this test. If you refuse it, your driver's license may be suspended for 30 days. If convicted in Court after that, that suspension will also be added to the suspension for the conviction. Do you understand that?

"MR. VROOMAN: Oh yeh.

\* \* \* \* \* \*

"OFFICER SCHOFIELD: Well, I just need an answer either yes or no if you will take the breath test. If you are not

happy with the results of that test you can have a blood test taken at the hospital at your expense. Do you want to take either test?"

The implied consent law provides in part:

"(a) Any person who operates a motor vehicle upon a public street or highway is deemed to have given consent, subject to the provisions herein, to a chemical test of his blood, breath or urine for the purpose of determining the alcoholic content of his blood \* \* \*. The arrested person shall be told that his failure to submit to the chemical test may result in the suspension of his privilege to operate a motor vehicle. \* \* \*" § 31–6–102(a), W.S. 1977.

"If a person under arrest refuses \* \* \* to submit to a chemical test \* \* \* none shall be given \* \* \*." § 31–6–102(c), W.S. 1977.

In *State v. Marquez*, Wyo., 638 P.2d 1292 (1982), we said the arrested person should be told that his failure to submit to the chemical test may result in the suspension of his privilege to drive a motor vehicle. In *State v. Chastain*, Wyo., 594 P.2d 458 (1979), we held that failure to advise an arrested person of the implied consent law rendered the result of a blood-alcohol test inadmissible in court. Here appellant was properly advised of the implied consent law. Additionally, there was abundant, even overwhelming, evidence before the court from which the judge could have found the appellant guilty without the result of the breath test. There was evidence of excessive speed, erratic driving, a strong odor of alcohol, appellant's flushed face and slurred speech, and failure of a field sobriety test. Also, appellant failed the finger-to-nose test, failed to recite the alphabet and could not count to four on his fingers.

### IV

 Finally, appellant asserts that on appeal to the district court, Wyoming Rules of Appellate Procedure should have been followed rather than Rules of Criminal Procedure for justice of the peace courts and municipal courts. We decline to address

that issue, if it can be characterized as an issue in this case. Appellant has not briefed his fourth assignment of error, nor has he favored us with any argument in support of the alleged error.

Appellant maintains that he unsuccessfully attempted to invoke Rule 4.03, W.R.A.P.[4] in his appeal from the justice of the peace court to the district court. We do not understand appellant's complaint. Both the electronic tapes of the proceedings in the justice court and a transcript were before the district court on appeal. Additionally, the district court had the original exhibits, papers and documents that were before the justice court. The parties submitted briefs to the district court. Rule 4.03, supra, would only be applicable if a transcript or electronic recording were not available in an appeal. There is no merit to appellant's assignment of error Number IV.

Affirmed.

---

4. Rule 4.03, W.R.A.P.:

"If no report of the evidence or proceedings at a hearing or trial was made, or if a transcript is unavailable, the appellant may prepare a statement of the evidence or proceedings from the best available means, including his recollection. The statement shall be served on the appellee, who may serve objections or propose amendments thereto within ten (10) days after service. Thereupon the statement and any objections or proposed amendments shall be submitted to the district court for settlement and approval and as settled and approved shall be included by the clerk of the district court in the record on appeal."