Curtis Wayne SIMMONS, a/k/a Apatchy
 Curtis Wayne Simmons, a/k/a Apatchy
 Curtis W. Simmons, Appellant (Defend-
 ant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 85–57.

Supreme Court of Wyoming.

Jan. 20, 1986.

Leonard D. Munker, State Public Defend-er, Martin J. McClain, Appellate Counsel, and Denise Nau (orally), Asst. Appellate Counsel, for appellant.

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., John W. Ren-neisen, Sr. Asst. Atty. Gen., Michael A. Blonigen, Asst. Atty. Gen., and Darold W. Killmer (orally), Legal Intern, for appellee.

Before THOMAS, C.J., and ROONEY,* BROWN and CARDINE, JJ., and GUTH-RIE, J., Ret.

CARDINE, Justice.

After a trial to the court, appellant Curtis Simmons was convicted of felony assault on a police officer in violation of § 6-5-204(b), W.S.1977 (June 1983 Replacement). That statute prohibits the infliction of bodily injury on a peace officer while that officer is engaged in the "lawful performance of his official duties." Appellant argues on appeal that his conviction should be reversed because the peace officer whom he injured was conducting an illegal arrest and, thus, not engaged in the lawful performance of his official duties. We affirm.

On September 10, 1984, Officers Fletcher and Cardiehlhac of the Rawlins police force went to appellant's home in response to a

* Retired November 30, 1985.

neighbor's report of a domestic disturbance. By his own admission, appellant was "raising hell" with his wife in the driveway because the front fender of his car was smashed and he thought she was responsible.

Upon their arrival, Officers Fletcher and Cardiehlhac began gathering information for a routine disturbance report by questioning appellant, his wife, and several of appellant's friends who had arrived about the same time as the police. Appellant, his wife, and friends refused to give their names and addresses to Officer Cardiehlhac and characterized his request as "a bunch of garbage."

About this time, Patrol Sergeant Dixon, Officer Cardiehlhac's superior, arrived, and the questioning was interrupted while Cardiehlhac briefed Dixon. At the resumption of questioning, appellant still refused to cooperate, stating in profane language that he knew his rights and he did not have to give any information. Sergeant Dixon felt that the situation was deteriorating because appellant was still "loud and boisterous." In a calm voice he told appellant that he and his wife should take their problems inside the house and handle them like adults, but appellant responded with a profanity. Only after Officer Dixon repeated his request did appellant withdraw to his yard where he stated, "I'm in my own yard now, * * * son-of-bitches can't get me, I'm in my own yard, I can do whatever I want to do." Appellant's wife also joined the fray, telling appellant, "they can't tell you to do that; push it, Apatchy, they can't tell you that." By this time, neighbors had gathered across the street because of the commotion and Officer Dixon warned appellant that he should go inside. Appellant replied, "Well, there ain't enough of you son-of-a-bitches to get me."

Although appellant continued to utter profanities from his yard, Officer Dixon decided that the situation might best calm down if the police left, because it appeared to Officer Dixon that appellant's anger was now directed more at the police than at his wife. He and the other officers began to walk toward their patrol cars. But appellant was not content to let the officers leave. He ran out of his fenced yard, followed the police toward their cars, and screamed another obscenity which could be heard by the many neighbors who had come to the street in curiosity. Officer Dixon turned around, drew his nightstick, and advanced toward appellant ordering him to return to his house. As appellant withdrew, Officer Dixon told him, "you're doing just fine. Now just keep going in and we're all going to be okay here." Appellant, however, uttered another profanity which was the last straw for Officer Dixon who finally decided to make the arrest for breach of peace.

As soon as Officer Dixon told appellant that he was under arrest, appellant punched the officer in the face, knocking off his glasses and hat and bruising his left cheekbone. Officer Sparks, a fourth policeman who had come to the scene, went to Dixon's aid, and they subdued appellant and handcuffed him. Nevertheless, he managed to kick Officer Sparks in the thigh during the scuffle. The other two officers were occupied keeping appellant's wife and friends from coming to appellant's aid. Officer Dixon testified at trial that appellant's wife and friends remained aroused causing the officers to anticipate an attack from behind. Officers Dixon and Sparks, nevertheless, forced appellant into the patrol car, and no further violence occurred other than appellant's continued resistance to the arrest.

Appellant was charged with violating § 6–5–204(b), W.S.1977 (June 1983 Replacement), which provides:

> "A person who intentionally and knowingly causes or attempts to cause bodily injury to a peace officer engaged in the lawful performance of his official duties is guilty of a felony punishable by imprisonment for not more than ten (10) years."

At the conclusion of the trial, appellant moved for a judgment of acquittal. The court denied the motion, explaining that even if appellant had not actually commit-

ted a breach of peace when arrested, there was at least sufficient probable cause to make the arrest lawful. The court found appellant guilty as charged and sentenced him to a term of fourteen to eighteen months in the Wyoming State Penitentiary.

 Appellant contended at trial, and contends now on appeal, that the warrantless arrest was illegal because it was unsupported by probable cause that a breach of peace had occurred; that since the arrest was illegal, Officers Dixon and Sparks could not have been engaged in the lawful performance of their official duties at the time of the assault; and, therefore, he cannot be guilty of the offense charged. It is an argument we cannot accept, because we disagree with its initial factual premise.[1] After reviewing the evidence "in a light most favorable to the State,"[2] we believe that the trial court correctly held that Officer Dixon made a lawful arrest based on probable cause that appellant was violating the Rawlins breach-of-peace ordinance. The assaults, therefore, occurred while Officers Dixon and Sparks were "engaged in the lawful performance of [their] official duties."

Section 7–2–103(a), W.S.1977, 1985 Cum. Supp., sets the requirements for a lawful warrantless arrest:

"(a) A peace officer may arrest a person without a warrant and detain him until a legal warrant can be obtained when:

"(i) Any criminal offense is being committed in his presence by the person to be arrested * * *."

In *Rodarte v. City of Riverton,* Wyo., 552 P.2d 1245, 1252 (1976), we interpreted this subsection of the statute to allow a warrantless arrest when the officer has "reasonable grounds to believe that an offense is being committed in his presence by the person to be arrested." We used the term "reasonable grounds" interchangeably with "probable cause." *Rodarte,* supra at 1253, citing *Williams v. United States,* 323 F.2d 90, 93 (10th Cir.1963). Probable cause exists when at the moment the arrest is made the facts and circumstances within the officer's knowledge and of which he has reasonably trustworthy information are sufficient to warrant a prudent man in believing that the accused has committed or is committing an offense. *Rodarte,* supra, 552 P.2d at 1253, citing *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964).

 In this case, the Rawlins breach-of-peace ordinance, § 9.16.020, defined the offense upon which Officer Dixon based the arrest. The ordinance states in relevant part:

"*Breach of Peace.* A person is guilty of breach of peace if, with intent to cause public inconvenience, annoyance or alarm, or carelessly creating a risk thereof, he or she:

\* \* \* \* \* \*

"C. Creates loud and offensive noise or utters profane or obscene language in any public street or other public place, or place to which the public is invited within the presence or hearing of other individu-

---

1. We need not decide whether a person who resists an unlawful warrantless arrest can be convicted under § 6–5–204(a) or (b), W.S.1977 (June 1983 Replacement). Our statement in *Storms v. State,* Wyo., 590 P.2d 1321, 1323 (1979), that a citizen can resist an officer who was conducting an unlawful search is not dispositive in the unlawful arrest situation. Moreover, the Storms statement was merely dictum because we held in that case that the search was lawful and never reached the issue of whether an unlawful search may be resisted.

2. We recently reiterated our sufficiency-of-the-evidence test in a drug case involving this same appellant. *Simmons v. State,* Wyo., 687 P.2d 255, 257 (1984).

"We test the sufficiency of the evidence on appeal by examining and accepting as true the evidence of the prosecution, leaving out of consideration entirely the evidence of the defendant in conflict therewith; we give every favorable inference which may reasonably and fairly be drawn to the evidence of the prosecution. In other words, it is not whether the evidence establishes guilt beyond a reasonable doubt for us, but whether it is sufficient to form the basis of a reasonable inference of guilt beyond a reasonable doubt to be drawn by the jury when the evidence is viewed in a light most favorable to the State." (Citations omitted.)

als and in such a manner as to incite or threaten to incite others to violence * *."

There is no doubt that appellant used profane language in a public place. He swore in his yard, on the sidewalk, and when he followed the police to their patrol cars. Nor is there any question that appellant's profanity was in the presence of other individuals. The real probable cause question under the ordinance is whether a prudent man knowing what Sergeant Dixon knew would have believed that appellant's profanity was uttered in such a manner as to threaten to incite others to violence.

A court must generally determine whether there was probable cause for a warrantless arrest by using a standard of reasonableness, viewed with practicality and applied with good sense. *Vrooman v. State*, Wyo., 642 P.2d 782, 784 (1982). Viewing the arrest from a practical standpoint, Officer Dixon had probable cause to believe that appellant's profanity threatened to incite others to violence. Appellant was not alone when confronting the police. His wife and friends were present and uncooperative. In fact, his wife was encouraging his resistance with profanity of her own. Officer Dixon testified that both appellant and his wife made threatening moves toward Officer Cardiehlhac before the arrest.

The fact that Officer Dixon ordered his men to leave at one point because he felt that appellant would cool down and take his argument inside does not alter our conclusion. Appellant only became more vocal and hostile as the officers prepared to leave. It would have been absurd for the police to retire knowing that appellant's public profanity would continue to bother the neighbors, and possibly incite their retaliation. Officer Dixon testified, "from my experience, my background, by us leaving, we would have had to come back."

Of course, nobody can say for sure whether violence would have actually ensued if the officers had refrained from arresting appellant for breach of peace. The probable cause standard does not require an officer to be absolutely certain when he makes a decision in the field. *Kimbley v. City of Green River*, Wyo., 663 P.2d 871, 885 (1983). In light of the facts and circumstances before Officer Dixon, we can well understand his conclusion that appellant's continued shouting and swearing, as well as appellant's rush towards the police as they initially began to depart, created a risk that appellant's friends and wife might be incited to violence. Their reaction to appellant's arrest shows that they had little respect for the police and might have been easily incited into action if appellant continued to carry on.

In conclusion, Officer Dixon had probable cause to believe that appellant was committing a breach of peace as defined by the Rawlins ordinance. The arrest was lawful under our arrest statute because appellant's criminal act was occurring in the presence of the officer. The bodily harm that appellant inflicted on the officers while resisting the lawful arrest occurred while the officers were in the performance of their official duties and was properly punishable under § 6–5–204(b).

Affirmed.

THOMAS, Chief Justice, specially concurring.

I certainly agree with the disposition of this case in accordance with the majority opinion. With respect to the sufficiency of the evidence test recited in footnote 2, I would reiterate the views set forth in my concurring opinion in *Rodriguez v. State*, Wyo., 711 P.2d 410 (1985).