2005 WY 37

**Milton BROWN, III, Appellant
(Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

No. 03–225.

Supreme Court of Wyoming.

April 1, 2005.

Representing Appellant: Kenneth M. Koski, State Public Defender; Donna D. Domonkos, Appellate Counsel; Tina N. Kerin, Senior Assistant Appellate Counsel.

Representing Appellee: Patrick J. Crank, Wyoming Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Georgia L. Tibbetts, Senior Assistant Attorney General.

Before HILL, C.J., and GOLDEN, KITE, and VOIGT, JJ., and SKAVDAHL, D.J.

GOLDEN, Justice.

[¶ 1] Milton Brown III (Brown) appeals from the judgment and sentence of the District Court, First Judicial District, following a jury verdict convicting him of felony interference with a peace officer as proscribed by Wyo. Stat. Ann. § 6-5-204(b) (LexisNexis 2003).[1] Brown assigns three errors: (1) The trial court erred in admitting irrelevant, prejudicial testimony from prosecution witness Mary Love; (2) plain error occurred because the prosecution failed to prove an essential element of the crime, namely, the officer-victim was in the lawful performance of his official duties; and (3) the prosecutor elicited and argued impermissible victim impact testimony.

[¶ 2] We affirm.

## FACTS[2]

### General

[¶ 3] The evidence adduced at trial showed the following events. In the late night

---

1. This statute reads: "(b) A person who intentionally and knowingly causes or attempts to cause bodily injury to a peace officer engaged in the lawful performance of his official duties is guilty of a felony punishable by imprisonment for not more than ten (10) years."

2. In reviewing a challenge to the sufficiency of the evidence, this Court accepts as true the evi-

hours of December 14, 2002, into the morning hours of December 15, 2002, the swing shift officers (4:15 p.m. to 2:45 a.m.) and the midnight shift officers (9:30 p.m. to 8:00 a.m.) of the Cheyenne Police Department were extremely busy. The majority of the swing shift was standing over to help the midnight shift because of the volume of disturbance calls. There were many fights, a stabbing, intoxicated juveniles fleeing an accident scene, to name a few. Around 3:40 a.m., December 15, 2002, Officer Thomas Hood, working the midnight shift, received and responded to a call of a loud party at the Pershing Point apartments. Upon Officer Hood's arrival at the apartments, he contacted two females and one male who were arguing with each other. Officer Hood spoke to the older of the two women, Mary Love. Ms. Love told Officer Hood that people in the apartment above her were having a party and she wanted them to quiet down and one of those persons had tried to get into her apartment. Officer Hood told Ms. Love that he would go to the apartment above hers, contact those people, and have them quiet down. Because the police department was so busy, with many calls stacked, Officer Hood's intention was to quiet down the partying people, then leave to handle the many calls that were coming into the police department. While speaking to Ms. Love, Officer Hood saw a male wearing an orange jersey and orange head-covering walking down the stairs of the apartment complex. The male was directly in front of Officer Hood and the stairs were directly behind the male, so the male was in front of the stairwell. The male, who was Brown, told Officer Hood, "You're not going up there. My family is up there." Officer Hood smelled "a very strong odor of alcoholic beverage" on Brown and noticed that Brown's eyes were "very bloodshot, watery." Brown's speech was "very slurred." Officer Hood believed Brown to be "very intoxicated." Officer Hood asked Brown if he lived there; Brown said no. Officer Hood said to Brown, "Well, I'm going up there and contact the folks up there." Brown replied,

"Fuck you. You're not going up there." Officer Hood once more asked Brown if he lived in the apartment, and Brown said no. Officer Hood once more told Brown he was going up to contact the people upstairs. Brown again said, "Fuck you." Officer Hood then told Brown he needed to move out of his way, but Brown did not move. Officer Hood went to step around Brown, and Brown yelled, "Fuck you." Officer Hood testified that he believed Brown was going to continue to be a problem and was interfering with his contacting the residents of the upstairs apartment to have them quiet down. Officer Hood told Brown he was under arrest and going to jail; Officer Hood moved toward Brown and grabbed his left hand. As Officer Hood tried to put Brown into a wristlock, Brown spun around, grabbed Officer Hood by the waist and lifted him off the ground, and both men moved backwards. Officer Hood's back struck a car and both men fell to the ground with Brown on top of Officer Hood.

[¶ 4] Officer Rick Wood, who had arrived at the apartments a few minutes after Officer Hood had arrived, had seen Officer Hood talking to some people and began to talk to others nearby. Officer Wood heard Brown's verbal abuse of Officer Hood, saw Officer Hood grab Brown's arm and Brown's physical reaction. According to Officer Wood's description, Brown grabbed Officer Hood in a bear hug, picked him off the ground, pushed him backwards several feet, and slammed him against a car. Officer Wood ran to the men, grabbed Brown, and all three men went to the ground. The two officers struggled to control Brown who was fighting them. Eventually, the officers subdued Brown. When the police transported Brown in a patrol car to the detention center, Brown passed out and had to be awakened upon arrival at the detention center.

[¶ 5] As we address the specific errors raised by Brown, we will set forth as necessary more specific facts which frame each issue.

dence of the prosecution, does not consider the evidence of the defendant in conflict with the prosecution's evidence, and gives to the prosecution those inferences which may be reasonably and fairly drawn from the prosecution's evidence. *Tillett v. State,* 637 P.2d 261, 263 (Wyo. 1981).

## DISCUSSION

### ISSUE ONE

[¶ 6] Whether the trial court erred in admitting testimony from the prosecution's witness Mary Love that before the police arrived at the apartments (1) Love had asked Brown's girlfriend, Tiffany Smith, to lower the volume of the music in her apartment and Smith had threatened to kick Love's ass and push her down the stairs; and (2) as Love returned to her own apartment after speaking with Smith, Brown had followed her and tried to force his way into her apartment.

### Specific Facts on the Smith–Love Confrontation

[¶ 7] In the prosecutor's opening statement to the jury, he previewed the expected testimony of witness Love. Defense counsel did not object when the prosecutor told the jury that witness Love would testify that Smith threatened to "kick her ass" and push her down the stairs. Defense counsel did not object when witness Love testified about Smith's threats.

### Standard of Review

[¶ 8] When trial counsel does not object at trial to testimony later challenged on appeal, as in this case, the applicable standard of review is plain error, the three requirements of which are a clear record of the alleged error, demonstration of the violation of a clear and unequivocal rule of law, and proof that the challenging party has been denied a substantial right and he has been materially prejudiced as a result of that denial. *Wilks v. State*, 2002 WY 100, ¶ 7, 49 P.3d 975, ¶ 7 (Wyo.2002). The parties here agree that we have a clear record of the alleged error but disagree on the presence of the rule's two other requirements.

### Resolution

[¶ 9] Brown argues the Smith–Love confrontation evidence was irrelevant to Brown's later statements and actions toward Officer Hood which gave rise to Brown's prosecution, and, therefore, violated W.R.E. 402 (evidence which is not relevant is not admissible). While the State agrees that the Smith–Love confrontation evidence had little direct bearing on the ultimate issue before the jury—whether Brown was guilty of felony interference with a peace officer—the State argues the evidence was relevant, and therefore admissible, because it helped explain why the police were summoned, and it enhanced the natural development of the facts in the case. *Solis v. State*, 981 P.2d 28, 31 (Wyo.1999), *Beintema v. State*, 936 P.2d 1221, 1224 (Wyo.1997). Additionally, the State impliedly contends that Brown has failed to prove the denial of a substantial right and resulting material prejudice because Brown played no part in the Smith–Love confrontation and the evidence of that confrontation was a very minute part of the State's other strong evidence against Brown.

[¶ 10] We hold that Brown has not satisfied the second and third requirements of the plain error rule.

### Specific Facts of the Brown–Love Confrontation

[¶ 11] In the prosecutor's opening statement to the jury, he also previewed Love's expected testimony that, as Love returned to her apartment after her confrontation with Smith, Brown and another man followed her and Brown tried to force his way into her apartment. Defense counsel did not contemporaneously object to the prosecutor's preview. The prosecutor continued and then concluded his opening statement. Out of the presence of the jury, defense counsel orally moved in limine to exclude any testimony about the Brown–Love confrontation on relevancy and probative grounds under W.R.E. 404(b), 401, and 403. The trial court initially reserved ruling until after defense counsel's opening statement, but when defense counsel informed the trial court he was reserving opening statement the trial court permitted the prosecutor to respond to defense counsel's liminal motion. Contending that the Brown–Love confrontation was relevant and probative, the prosecutor argued that this evidence showed Brown's state of mind "right before" Brown's confrontation with Officer Hood and was "probative of what's going on, it all happened within a matter of

minutes." The trial court denied defense counsel's liminal motion. Defense counsel then moved for a mistrial, if Love testified about Brown's confrontation with her, claiming "this evidence is so prejudicial [and has no] probative value." The trial court denied the mistrial motion. During Love's direct testimony for the prosecution, Love testified about Brown's confrontation with her.

### Standard of Review

[¶ 12] When this Court reviews a trial court's evidentiary ruling, the standard is:

"Evidentiary rulings are within the sound discretion of the trial court and include determinations of the adequacy of foundation and relevancy, competency, materiality, and remoteness of the evidence. This court will generally accede to the trial court's determination of the admissibility of evidence unless that court clearly abused its discretion." *Solis v. State*, 981 P.2d 34, 36 (Wyo.1999) (citation omitted). We have described the standard of an abuse of discretion as reaching the question of the reasonableness of the trial court's choice. Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. "In the absence of an abuse of discretion, we will not disturb the trial court's determination." [*Griswold v. State*, 2001 WY 14, ¶ 7, 17 P.3d 728, ¶ 7 (Wyo.2001).] The burden is on the defendant to establish such abuse.

*Wilks*, ¶ 19 (quoting *Skinner v. State*, 2001 WY 102, ¶ 25, 33 P.3d 758, ¶ 25 (Wyo.2001)) (alterations in original).

### Resolution

[¶ 13] Brown claims the Brown–Love confrontation evidence was irrelevant to Brown's later statements and actions toward Officer Hood which gave rise to Brown's prosecution and, therefore, violated W.R.E. 402 (evidence which is not relevant is not admissible). Additionally, Brown asserts that this evidence was impermissible character or uncharged misconduct evidence under W.R.E. 404(b) which the prosecutor used in closing argument to imply that Brown acted in conformity with his confrontational character when he confronted Officer Hood. Brown concludes his argument by stating such evidence was overwhelmingly prejudicial because any rational juror would be prejudiced against a man who tried to force his way into a woman's home.

[¶ 14] The State counters Brown's position on this allegedly erroneous evidentiary ruling with several points. The State first asserts the evidence was admissible under W.R.E. 404(b) to show both Brown's intent or state of mind a short time before Brown's confrontation with Officer Hood and the absence of accident in light of Brown's claim that he accidentally stumbled into Officer Hood when the officer tried to execute a wristlock on Brown. *Wilson v. State*, 14 P.3d 912, 918 (Wyo.2000) (evidence of similar assaultive behavior admissible to show intent and refute claim of accident). The State reasons that the evidence had probative value as it made more probable Brown's intentional assault on Officer Hood. The State also contends that the prosecutor's closing argument reference to Brown's confrontation with Love when viewed in context of the entire closing argument was nothing more than a recap of the evidence and was not a call to convict Brown because of his bad character.

[¶ 15] Our study of the record reveals that Brown's defense counsel objected on relevancy grounds only and not on grounds of impermissible character evidence and made no cogent argument with respect to W.R.E. 404(b). On appeal, Brown raises for the first time the ground of impermissible character evidence, but not under a plain error analysis. We will not consider this late-raised issue. At trial, in response to Brown's liminal motion to exclude the Brown–Love confrontation evidence, the prosecutor urged that the evidence showed Brown's state of mind minutes before his confrontation with Officer Hood and was probative of "what was going on" in the context of the Brown–Officer Hood confrontation. After hearing the prosecutor's argument, the trial court ruled without comment, denying

Brown's motion. We believe it is fair to infer that the trial court accepted the prosecutor's reasoning. We hold that the trial court exercised sound judgment with regard to what was right under the circumstances based on objective criteria before it at the time. We hold the trial court did not abuse its discretion in making its admissibility determination in this instance.

### ISSUE TWO

[¶ 16] Whether plain error occurred because the prosecution failed to prove Officer Hood was in the lawful performance of his official duties, an essential element of the crime charged.

[¶ 17] Brown maintains that

[e]ven accepting Officer Hood's testimony in its entirety, there is no showing that Officer Hood was in the lawful performance of his official duties when he grabbed Mr. Brown by the arm and told him he was under arrest. This is true because Officer Hood lacked any probable cause whatsoever to arrest Mr. Brown.

### Standard of Review

[¶ 18] Both Brown and the State correctly note that although Brown's counsel moved for judgment of acquittal at the close of the prosecution's case-in-chief, Brown's counsel did not move for judgment of acquittal after the close of Brown's case-in-chief. Consequently, the plain error requirements, referred to earlier in this opinion, apply in reviewing Brown's appellate issue of insufficiency of the evidence that Officer Hood lacked probable cause to arrest Brown in the initial phase of their interaction at the apartments. *Griswold v. State*, 994 P.2d 920, 928 (Wyo.1999). Also, we apply the familiar standard that we accept as true the prosecution's evidence, give to the prosecution those inferences which may be reasonably and fairly drawn from that evidence, and do not consider the defendant's evidence in conflict with the prosecution's evidence and the inferences therefrom. *See Urbigkit v. State*, 2003 WY 57, ¶ 44, 67 P.3d 1207, ¶ 44 (Wyo.2003), and *Tillett*, 637 P.2d at 263. "[O]ur only

duty is to determine whether a quorum of reasonable and rational individuals would, or even could, have come to the same result as the jury actually did." *Bloomquist v. State*, 914 P.2d 812, 824 (Wyo.1996).

### Resolution

[¶ 19] Brown acknowledges that Officer Hood, as a peace officer under Wyoming law, may arrest a person without a warrant when, among other situations, any criminal offense is being committed in the officer's presence by the person to be arrested. Wyo. Stat. Ann. § 7–2–102(b)(i) (LexisNexis 2003). Brown also acknowledges that a person commits a misdemeanor if he knowingly obstructs, impedes or interferes with a peace officer while engaged in the lawful performance of his duties. Wyo. Stat. Ann. § 6–5–204(a) (LexisNexis 2003).[3] An officer's belief that the criminal offense of misdemeanor interference has been committed in his presence must be based on "reasonable grounds." *Simmons v. State*, 712 P.2d 887, 889 (Wyo.1986). We have used the term "reasonable grounds" interchangeably with the term "probable cause." *Id.* "Probable cause exists when at the moment the arrest is made the facts and circumstances within the officer's knowledge and of which he has reasonably trustworthy information are sufficient to warrant a prudent man in believing that the accused has committed or is committing an offense." *Id.* The facts and circumstances within the officer's knowledge need not rise to the level of proving guilt or even to the level of prima facie evidence of guilt for probable cause for an arrest to arise. *Jandro v. State*, 781 P.2d 512, 518 (Wyo. 1989).

[¶ 20] In the face of these review principles and substantive law, the viscera of Brown's argument are that although Brown verbally abused he did not make physical contact with or threatening gestures toward Officer Hood, and that the totality of his behavior did not constitute unlawful obstruction, impedance or interference with Officer

---

**3.** The State's brief informs the Court that § 9.04.020, a Cheyenne municipal ordinance, makes it unlawful for any person, in any manner, be it physical or verbal, to interfere with or otherwise obstruct any city officer engaged in the performance or discharge of his duties.

Hood as that officer was investigating and handling the disturbance call.

[¶ 21] The State's counter to Brown's position notes that Officer Hood was lawfully performing his official duty in responding to and trying to quickly investigate and settle the disturbance complaint at the apartments; Brown unilaterally and with verbal abuse inserted himself into Officer Hood's conversation with Love; Brown declared several times that Officer Hood was not going upstairs to talk with Smith and the others about the disturbance complaint; and Brown was physically positioned between Officer Hood and the stairs. Our study of the record reveals that Officer Hood observed that Brown was inebriated and was behaving and speaking in an aggressive manner, and Brown's behavior was preventing Officer Hood from timely handling and settling the disturbance complaint and returning to service to handle the many other calls coming into the police department at that time. Both Brown and the State acknowledge that this Court has reviewed this genre of interference cases before. In both *Newton v. State*, 698 P.2d 1149, 1150–51 (Wyo.1985), and *Tillett*, 637 P.2d at 264, this Court reviewed relevant authority and noted that verbal abuse alone may become sufficient to constitute unlawful interference where its intensity or the totality of several acts is such as to amount to an interference with an officer in the performance of his duty. We hold that Brown's abusive language, several declarations that Officer Hood was not going upstairs to handle the disturbance complaint, and the reasonable and fair inferences to be drawn from such declarations, the physical position of Brown between the stairs and Officer Hood, the inebriated condition, and the reasonable and fair inferences to be drawn from such condition, and Officer Hood's being delayed in handling the disturbance call and returning to other service because of Brown's behavior provided Officer Hood with reasonable grounds/probable cause to believe that Brown was unlawfully interfering with the officer's lawful performance of his duty. The criminality of Brown's behavior toward Officer Hood was for the trier of fact to decide. We hold the evidence sufficient to authorize a rational trier of fact to find Brown guilty beyond a reasonable doubt as charged.

## ISSUE THREE

[¶ 22] Whether the prosecutor elicited and argued impermissible victim impact testimony.

### Specific Facts

[¶ 23] Brown identified as plain error two comments made by the prosecutor in opening statement, one that Love would testify she was scared and the other that Officer Hood's fear factor increased during his altercation with Brown. Brown identifies as plain error [4] three times during Love's direct testimony when she testified she was scared when Brown and others came to her apartment. Brown identifies one time when Love testified she was nervous being at the trial, but defense counsel's objection was sustained by the trial court.

### Resolution

[¶ 24] In what may be fairly characterized as extremely shallow bordering on incogency, Brown's argument lumps the prosecutor's two comments in opening statement and Love's testimony she was scared and nervous into a victim impact category and baldly claims they had no probative value and were extremely inflammatory. The prosecutor's opening statement comments did not constitute victim impact testimony. The trial court instructed the jury that counsel statements are not evidence, and we presume the jury followed that instruction. Brown weakly asserts that Love was a victim for purposes of Wyo. Stat. Ann. § 7–21–101(a) (LexisNexis 2003), a provision concerning victim impact testimony; the State does not weigh in on the point. We are skeptical of Brown's assertion but need not decide the point. The trial court sustained Brown's objection to Love's "nervous" testimony, so it was not considered by the jury under the trial court's jury instructions. That leaves for plain error review Love's "scare" testimony. Our study of the record reveals that such testimony was

---

4. Brown's counsel did not object.

of so little substance in light of what the trial was all about, Brown's alleged interference with Officer Hood, that it had no possible effect on the outcome of the trial. We hold that Brown has not proved a substantial right has been denied him and, as a result, he has been materially prejudiced by those three small instances of Love's testimony. We find no plain error.

[¶ 25]   In summary, we hold that the trial court did not commit plain error in admitting Love's testimony, plain error did not occur in the sufficiency of the evidence, and plain error did not occur in the prosecutor's opening statement or in Love's testimony that she was scared and nervous.

[¶ 26]   We affirm the judgment and conviction in all respects.