2006 WY 17

**Kirk J. MILLER, Appellant (Defendant),**

v.

**The STATE of Wyoming,**
**Appellee (Plaintiff).**

**No. 05–33.**

Supreme Court of Wyoming.

Jan. 26, 2006.

Mike Cornia, Evanston, Wyoming, for appellant.

Patrick J. Crank, Wyoming Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; James Michael Causey, Assistant Attorney General, for appellee. Argument by Mr. Causey.

Before HILL, C.J., and GOLDEN, KITE, VOIGT, BURKE, JJ.

GOLDEN, Justice.

[¶ 1] A jury found Kirk Miller guilty of three counts of delivery of a controlled substance (methamphetamine). On appeal, Miller asks this Court to review whether he was denied his constitutional right to confront an adverse witness, whether he was denied a fair trial by the admission of a witness' out of court statements and the witness' guilty plea to a drug-related crime, and whether his convictions are supported by sufficient evidence. Finding no reversible error, we affirm the judgment and order of the district court.

## ISSUES

[¶ 2] Miller presents the following issues for our review:

I. Did denying [Miller] the ability to question the State's only witness regarding his recent conviction violated [sic] [Miller's] right to confrontation?

II. Whether the admission of Justin Miller's statements to the circuit court judge implicating [Miller] was error requiring reversal?

III. Was the presentation of evidence and argument involving Justin Miller's guilty plea as [sic] plain error?

IV. Was there sufficient evidence presented to support [Miller's] convictions, under the alternate theories of delivery presented to the jury?

## FACTS

[¶ 3] On January 25, 2003, Deputy Shawn Whitmore of the Lincoln County Sheriff's Office was on routine patrol on Highway 189 south of Kemmerer when he observed Justin Miller's (hereinafter Justin) car traveling in the southbound lane. Aware that Justin was wanted for a probation violation, Deputy Whitmore executed a stop of the vehicle and arrested him. A search of Justin's vehicle revealed several small baggies of methamphetamine that were hidden in the steering wheel.[1]

[¶ 4] Justin was charged with possession of a controlled substance. On January 27, 2003, Justin pled guilty to the possession charge. In response to questioning by the circuit court, Justin stated that he had received the methamphetamine from his uncle, Kirk Miller. Later that day, Deputy Whitmore and Sergeant Jerry Glasscock interviewed Justin and confirmed that Miller was the source of the methamphetamine found in the vehicle. That interview also revealed that Miller had supplied the drug to Justin on prior occasions in January 2003. Based on the information provided by Justin, Deputy Whitmore obtained a search warrant for Miller's home.

[¶ 5] During the search of Miller's residence on January 27, 2003, law enforcement officers seized several items linking Miller to the drug business, including a mortar and a scale containing methamphetamine residue, a heat-sealing device, numerous small baggies of the type used to sell the drug and a few packets of methamphetamine, most of which were found in Miller's bedroom. Based on the evidence discovered during the search and Justin's statements concerning Miller's drug dealings, the State charged Miller with three counts of delivery of a controlled substance. After a two-day trial that commenced on August 30, 2004, a jury found Miller guilty of the charged offenses. The district court sentenced Miller to concurrent terms of imprisonment of three to six years but suspended execution of the sentences in

---

1. The search was conducted after Deputy Whitmore received information that Justin occasion-ally kept methamphetamine in his car.

favor of four years of supervised probation. This appeal followed.

[¶ 6] We will set forth as necessary additional facts as we address the issues raised by Miller.

## DISCUSSION

### Issue One—Denial of Right to Confrontation

[¶ 7] Miller alleges that he was denied his constitutional right to effectively confront Justin Miller during trial. Miller's constitutional claim presents a question of law. We review questions of law *de novo*. *Hannon v. State*, 2004 WY 8, ¶ 11, 84 P.3d 320, 328 (Wyo.2004).

[¶ 8] The primary right secured by the Confrontation Clause of the United States and Wyoming Constitutions is the right of cross-examination. *Hannon*, ¶ 16, 84 P.3d at 329 (citing *Davis v. Alaska*, 415 U.S. 308, 315, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974)). In order for there to be a violation of the right of confrontation, a defendant must show more than just a denial of the ability to ask specific questions of a particular witness. Rather, a defendant must show that he was prohibited "from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness ... 'to expose to the jury the facts from which jurors ... could appropriately draw inferences relating to the reliability of the witness.' " *Hannon*, ¶ 18, 84 P.3d at 330 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 680, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986)). The Confrontation Clause guarantees a defendant an "**opportunity** for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Van Arsdall*, 475 U.S. at 679, 106 S.Ct. at 1435 (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 295, 88 L.Ed.2d 15 (1985) (*per curiam*) (emphasis in original)). A defendant's right to cross-examination of a witness is not unfettered, but is subject to the trial court's "discretion to reasonably limit cross-examination to prevent, among other things, questioning that is repetitive or of marginal relevance." *Han-*

*non*, ¶ 22, 84 P.3d at 331–32 (quoting *United States v. DeSoto*, 950 F.2d 626, 629–30 (10th Cir.1991)); *see also Olden v. Kentucky*, 488 U.S. 227, 232, 109 S.Ct. 480, 483, 102 L.Ed.2d 513 (1988) (*per curiam*).

[¶ 9] Two weeks before trial, the State filed a motion in limine to prohibit the defense from inquiring into criminal charges then pending against Justin Miller. In that motion, the State revealed that two charges of battery and one charge of assault on a peace officer had been filed against Justin on July 6, 2004. The State contended that evidence of those charges was neither admissible nor relevant to any issue at Miller's trial. During a hearing on the motion on August 26, the prosecutor indicated that the charges arose out of a domestic dispute Justin had been involved in during the 4th of July weekend. The prosecutor explained:

> [PROSECUTOR]: Basically, what happened—it's alleged that [Justin] was assaulting his girlfriend. A citizen tried to intervene. It's alleged that he assaulted the citizen and then left. The police went looking for him, found him hiding under a truck. They tried to get him to come out from under the truck. When he came out, he charged the police officer. And when he hit the police officer, then they went to the ground in a fight, and he was arrested and taken to jail.

[¶ 10] The prosecutor revealed that, pursuant to a plea agreement not yet approved by the district court in charge of the case, Justin would be entering a plea of guilty to one count of felony interference with a peace office later that day, that the disposition of that charge would be pursuant to Wyo. Stat. Ann. § 7–13–301 (LexisNexis 2005), and that he did not expect the district court to accept or reject the plea agreement until after a presentence investigation report had been completed in the case. The prosecutor also noted that, even if the district court accepted the plea agreement, Justin would not be convicted of the felony offense. Additionally, the prosecutor reported that law enforcement found no drugs on Justin when he was arrested, and there was no evidence suggesting Justin was under the influence of any drug at the time.

[¶ 11]   In response, defense counsel stated:

> [DEFENSE COUNSEL]: * * * Certainly, his behavior is so out of the ordinary and bizarre as to indicate a continuation of his drug habit.
>
> That has some importance, because his allegations against his uncle, my client, Kirk Miller, is that he obtained his drugs from Mr. Miller. And he's indicated by his activities that he may be continuing his drug habit, which indicates he's getting his drugs from somewhere else. My only connection—my only concern is that this appears to me to be drug-induced activity. It certainly is out of the ordinary, and I want to be able to look at his drug habits and where he gets his drugs.

Defense counsel, however, had no direct evidence that Justin's behavior was drug induced. The district court refused to accept defense counsel's speculation as to the relevancy of Justin's criminal conduct:

> THE COURT: Well, unless there is something more in the assault case that would indicate drug usage, other than the criminal activity itself of assaulting a police officer, I don't see where that would take you, [Defense Counsel]. You say it's unusual or his behavior was unusual; but unless you've got something more to tie it to drug usage, I'm failing to see how that fits into your theory that he continues to use drugs or buys his drugs from somebody else or still is—still has the habit.
> * * * *
> So I'm going to deny the motion—or I guess I'm granting the motion for the State. That kind of testimony will not come in, unless there's something further that would lead me to change my mind. Otherwise, I just think it's too far of a stretch, and it would be highly prejudicial.

[¶ 12]   On appeal, Miller contends that the district court erred in granting the State's motion. Miller argues that, given Justin's admission at trial "that methamphetamine made him violent," and given Justin's violent behavior that weekend, "the conclusion could be drawn that, contrary to his testimony, he was using drugs again." Miller also suggests that evidence of the lenient disposition of the charges against Justin under Wyo. Stat. Ann. § 7–13–301 could have "affected the jury's view of his credibility." According to Miller, the district court's liminal ruling prohibiting him from inquiring into the criminal charges against Justin deprived him of the opportunity to present evidence relevant to Justin's truthfulness and his possible motives for testifying in favor of the State and, thus, denied him his constitutional right to confront a witness against him.

[¶ 13]   Miller's argument misses the mark. Miller's argument approaches the issue from hindsight and is based on matters never brought to the attention of the district court. The district court's ruling was premised solely on the argument presented at the hearing on the motion in limine, several days prior to trial. At that time, the district court simply told defense counsel that, given the argument presented, it could find little relevancy in Justin's criminal conduct to the charges pending against Miller. The district court expressly stated that it would revisit the issue if defense counsel could produce a more significant reason for the introduction of the evidence. The record discloses that defense counsel never availed himself of this opportunity before or during trial. Under the circumstances, we fail to see how Miller's right to effectively cross-examine Justin was impaired by the district court's liminal ruling.

### Issue Two—Justin Miller's Statements in the Circuit Court

[¶ 14]   Miller asserts that reversible error occurred when the prosecutor elicited testimony from Justin Miller and Deputy Whitmore concerning Justin's statement in circuit court that he had obtained the methamphetamine underlying his guilty plea from Miller. Miller also faults the prosecutor for referencing Justin's circuit court statement in his opening statement and closing arguments. He claims that such amounted to the improper admission into evidence of a prior consistent statement before there was an attack on Miller's credibility, in violation of W.R.E. 801(d)(1)(B).

[¶ 15]   Because Miller did not object at trial to the evidence challenged on

appeal, we apply our plain error standard of review to his claim. Plain error exists when (1) the record clearly reflects the alleged error; (2) the party claiming the error demonstrates a violation of a clear and unequivocal rule of law; and (3) the party proves that the violation adversely affected a substantial right resulting in material prejudice. *Brown v. State*, 2005 WY 37, ¶ 8, 109 P.3d 52, 55 (Wyo.2005); *Blakeman v. State*, 2004 WY 139, ¶ 18, 100 P.3d 1229, 1234 (Wyo.2004); *Fortner v. State*, 932 P.2d 1283, 1286 (Wyo. 1997). To establish material prejudice, Miller must show a reasonable possibility that he would have received a more favorable verdict in the absence of the error. *Humphrey v. State*, 962 P.2d 866, 870 (Wyo.1998).

[¶ 16] The first prong of the plain error test is met because the record clearly reflects the testimony and the prosecutor's comments alleged as error. After careful review of the record, we seriously doubt that the second prong of the plain error test is met. However, we need not determine if the tenets of W.R.E. 801(d)(1)(B) were transgressed because we find that Miller has failed to establish material prejudice.

[¶ 17] At trial, Justin testified that Miller supplied him with methamphetamine and provided details about the deliveries with which Miller was charged. Justin's claim that Miller had supplied him with methamphetamine was corroborated by Deputy Whitmore. According to Deputy Whitmore, Justin stated during an interview that he had obtained the drug from Miller on multiple occasions. Additionally, the State's evidence detailed the drug-related items recovered during a search of Miller's residence, most of which were found in Miller's bedroom. Those items included packets of methamphetamine, packaging materials, a heat-sealing device, a scale and a mortar, both of which contained methamphetamine residue. The State presented the jury with ample evidence from which it could convict Miller of delivery of methamphetamine on the dates charged. We do not think under the facts of this case that the challenged testimony had a substantial impact on the verdict of the jury.

[¶ 18] Nor do we believe that the prosecutor's comments at issue on appeal had any effect on the jury's determination of Miller's guilt. The challenged comments were not extensive. The district court instructed the jury that the prosecutor's statements were not evidence to be considered in evaluating Miller's guilt or innocence on the charged offenses. We presume the jury followed the court's instruction. *Brown*, ¶ 24, 109 P.3d at 58.

[¶ 19] A careful review of the record leads us to conclude that no reasonable possibility exists that the jury's verdict would have been different in the absence of the challenged testimony and the prosecutor's comments. Because plain error has not been established, we reject Miller's complaint on this issue.

### Issue Three—Evidence of Justin Miller's Guilty Plea

[¶ 20] Miller next argues that reversible error occurred when the district court allowed Justin and Deputy Whitmore to testify about Justin's guilty plea to possessing the methamphetamine supplied by Miller, and when it allowed the prosecutor to reference that plea during his opening statement and closing arguments. Miller acknowledges that he did not object to the testimony or to the prosecutor's statements at issue and, consequently, must demonstrate plain error to succeed on his claim. As discussed above, plain error requires Miller to show both a violation of a clear and unequivocal rule of law and a denial of a substantial right resulting in material prejudice. *Brown*, ¶ 8, 109 P.3d at 55. We find that Miller has not satisfied his burden.

[¶ 21] Miller finds the clear and unequivocal rule of law he claims was violated in *Kwallek v. State*, 596 P.2d 1372 (Wyo. 1979), and the line of cases following it. The evidentiary rule upon which Miller relies states that "when two persons are indicted for separate offenses growing out of the same circumstance, the fact that one has pleaded guilty is inadmissible against the other." *Id.* at 1375; *see also KP v. State*, 2004 WY 165, ¶ 14, 102 P.3d 217, 221–22 (Wyo.2004); *Adams v. State*, 2003 WY 152, ¶ 27, 79 P.3d 526, 534 (Wyo.2003); *Mazurek*

*v. State,* 10 P.3d 531, 535 (Wyo.2000); *Urrutia v. State,* 924 P.2d 965, 969 (Wyo.1996). The rationale for the rule is that the evidence "is irrelevant and incompetent because it suggests that since the confederate is guilty, the defendant must also be guilty, and this inference violates the defendant's right to have his trial on its own merits." *Kwallek,* 596 P.2d at 1375–76.

[¶ 22] The *Kwallek* rule is inapplicable under the particular facts and circumstances of this case. As indicated above, that rule precludes the State from presenting evidence of guilty pleas of accomplices and co-conspirators in its case-in-chief under circumstances that might tend to implicate the defendant's guilt by association. *KP,* ¶ 18, 102 P.3d at 223; *Mazurek,* 10 P.3d at 535. Here, Justin was not, in any sense of the word, an accomplice or a co-conspirator in the crimes for which Miller was on trial. Justin's guilty plea did not concern any participation in the distribution of a controlled substance but, rather, involved his possession of methamphetamine, conduct dissimilar in nature to the criminal conduct underlying the charges against Miller. Although Justin's plea pertained to the methamphetamine Miller was charged with supplying, that fact alone does not bring evidence of that plea under the realm of the *Kwallek* rule. Because Miller has not shown a violation of the *Kwallek* rule, he cannot demonstrate plain error.

### Issue Four—Evidentiary Sufficiency

[¶ 23] Miller was convicted of three counts of delivery of a controlled substance under Wyo. Stat. Ann. § 35–7–1031(a)(i) (LexisNexis 2005). With respect to each count, the district court instructed the jury that, in order to find Miller guilty, it had to find beyond a reasonable doubt that, on or about the date specified, Miller delivered methamphetamine to another individual in Lincoln County, Wyoming. Instruction No. 19 defined the term "deliver" as an "actual, constructive, or attempted transfer from one person to another of a controlled substance."

[¶ 24] Citing to the language of Instruction No. 19, Miller asserts that his convictions cannot stand under the principles espoused in *Bush v. State,* 908 P.2d 963 (Wyo. 1995), and its progeny. Miller claims that, because Instruction No. 19 contained three alternative theories for satisfying the delivery element, and because the general verdict form did not specify which alternative the jury based its verdict, sufficient evidence on all three alternatives must exist to sustain his conviction on each count. According to Miller, the evidence supports a finding of an "actual" delivery of methamphetamine to Justin on the dates in question, but fails to show a "constructive" or "attempted" delivery. Miller contends that the absence of evidence proving a "constructive" or "attempted" delivery mandates reversal of his convictions. Miller misreads the holding of those cases.

[¶ 25] In the *Bush* line of cases, we held that when a crime may be committed in alternative ways, and the jury is instructed on each alternative and returns a general verdict of guilt, the verdict must be set aside unless sufficient evidence exists to support a finding of guilt as to each alternative. *Bush,* 908 P.2d at 966–67; *Urbigkit v. State,* 2003 WY 57, ¶ 42, 67 P.3d 1207, 1224 (Wyo.2003); *May v. State,* 2003 WY 14, ¶ 13, 62 P.3d 574, 579 (Wyo.2003); *Tanner v. State,* 2002 WY 170, ¶ 8, 57 P.3d 1242, 1244 (Wyo.2002); *King v. State,* 2002 WY 27, ¶ 24, 40 P.3d 700, 706 (Wyo.2002). The holding of those cases pertain to elements instructions which quote directly from a criminal statute containing alternative grounds for conviction of the crime charged. For example, *Bush* and *Tanner* concerned Wyoming's burglary statute, Wyo. Stat. Ann. § 6–3–301(a) (LexisNexis 2005).[2] In each case, the jury was instructed that it could find the defendant guilty of the crime of burglary if the evidence showed he entered a building without authority with the intent to commit larceny or the intent to commit a felony. Because the evidence was not sufficient to show entry with the intent to commit both larceny and a

---

2.  Wyo. Stat. Ann. § 6–3–301(a) states:
    (a) A person is guilty of burglary if, without authority, he enters or remains in a building,

occupied structure or vehicle, or separately secured or occupied portion thereof, with intent to commit larceny or a felony therein.

felony, we reversed the burglary conviction in each case.

[¶ 26] The problem that existed in *Bush* and the other cases, however, does not exist in this case. Here, the elements instruction given to the jury on the charged offense did not contain alternative elements upon which Miller's convictions could be based. Miller's jury was only required to determine if the evidence proved Miller delivered a controlled substance to Justin Miller, nothing more. Instruction No. 19 merely defined the term "deliver" and did not have the effect of charging an alternative ground for conviction. *Bush* and its progeny simply are inapplicable to the definitional instruction given in this case.

[¶ 27] Our review of the record in this case discloses ample evidence from which the jury could have found beyond a reasonable doubt that Miller delivered a controlled substance to Justin on the dates charged. We will not second-guess the jury's guilty verdict.

## CONCLUSION

[¶ 28] Miller has failed to convince this Court that any reversible error exists with respect to any of the issues raised in this appeal. Affirmed.