# IN THE SUPREME COURT, STATE OF WYOMING

## 2014 WY 104

APRIL TERM, A.D. 2014

August 19, 2014

KIYON L. BROWN,

Appellant
(Defendant),

v.                                                                      S-13-0269

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Natrona County*
*The Honorable W. Thomas Sullins, Judge*

*Representing Appellant:*

> Office of the State Public Defender: Diane M. Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel; Eric M. Alden, Senior Assistant Appellate Counsel. Argument by Mr. Alden.

*Representing Appellee:*

> Peter K. Michael, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Jenny L. Craig, Senior Assistant Attorney General; Caitlin F. Young, Assistant Attorney General. Argument by Ms. Young.

*Before BURKE, C.J., and HILL, KITE,\* DAVIS, and FOX, JJ.*

*\*Chief Justice at time of oral argument.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Justice.**

[¶1]    A jury convicted Appellant Kiyon L. Brown of aggravated battery in violation of Wyo. Stat. Ann. § 6-2-502(a)(i) (LexisNexis 2013), arising from an altercation with his girlfriend and his girlfriend's sister.  Mr. Brown appeals his conviction, claiming that the evidence failed to establish that the victim suffered serious bodily injury, that the jury was given inadequate instructions on the theory of self-defense, and that he was denied due process of law due to prosecutorial misconduct during the trial.  We affirm.

## *ISSUES*

[¶2]    1.   Was there sufficient evidence to establish that the victim suffered serious bodily injury?

2.   Was the jury adequately instructed on the theory of self-defense?

3.   Did the prosecutor's attempt to elicit sympathy for the victim constitute prosecutorial misconduct that denied Mr. Brown due process of law?

## *FACTS*

[¶3]    Kiyon L. Brown lived in Casper, Wyoming, where he shared an apartment with his girlfriend, Jeannie Jacobsen, and her daughter.  Ms. Jacobsen's mother passed away, and the family had a wake for her on January 25, 2013.  As a result, numerous family members, including Ms. Jacobsen's sister, Kimberlin Otto, came to stay with Ms. Jacobsen and Mr. Brown.

[¶4]    Tensions rose between Ms. Jacobsen and Mr. Brown throughout the day of the wake, but came to a head that night and early the next morning.  After the wake, Ms. Jacobsen contacted Mr. Brown to obtain his key to the apartment, having forgotten her own.  When Ms. Jacobsen went to retrieve the key from Mr. Brown, she informed him that she did not want him to return to their shared apartment that night.  After settling family members in at the apartment, Ms. Jacobsen then went to a local bar with family and friends.  Mr. Brown later returned to the apartment where Ms. Otto and a number of children had remained.  Later that night or in the early hours of the next morning, Ms. Jacobsen returned to the apartment.  Mr. Brown confronted her at the door and the two

1

moved into the kitchen. The testimony begins to diverge at this point. Mr. Brown alleges that Ms. Jacobsen punched him in the chest with his key. Ms. Jacobsen, however, testified that she did not, at any time, hit Mr. Brown, and that he grabbed her by the throat while confronting her in the kitchen. Ms. Jacobsen's daughter awoke, and frightened by the scene in the kitchen, woke Ms. Otto. Ms. Otto rose from bed and went to the kitchen telling the parties to stop fighting as there were children present. Ms. Jacobsen and Mr. Brown then separated.

[¶5] Mr. Brown returned to the bedroom while Ms. Jacobsen lay down with her daughter in the living room. Mr. Brown rose from bed and again began to quarrel with Ms. Jacobsen, demanding that she return his key. Ms. Jacobsen went into the bathroom where she placed the key in her bra. Mr. Brown followed Ms. Jacobsen into the bathroom where Mr. Brown claims he attempted to reach for the key. Ms. Otto testified, however, that she saw Mr. Brown's hand closed in a fist appearing as though he was about to strike Ms. Jacobsen. Entering the bathroom, Ms. Otto jumped on Mr. Brown to prevent him from hitting Ms. Jacobsen, pulling him to the floor. Arising, Mr. Brown began to hit Ms. Otto. He then turned to Ms. Jacobsen, who had fallen in the bathtub during the melee, and struck her, breaking her jaw in two places.

[¶6] Mr. Brown was charged with one count of aggravated battery in violation of Wyo. Stat. Ann. § 6-2-502(a)(i) as a result of his blow to Ms. Jacobsen. He was also charged with one count of misdemeanor battery in violation of Wyo. Stat. Ann. § 6-2-501(b), (d) (LexisNexis 2013)[1] for striking Ms. Otto.

[¶7] A jury convicted Mr. Brown of aggravated battery in violation of Wyo. Stat. Ann. § 6-2-502(a)(i) and acquitted Mr. Brown on the charge of misdemeanor battery (of the sister) in violation of § 6-2-501(b), (d). Mr. Brown then filed a motion for a new trial which the district court denied. Mr. Brown's timely appeal followed.

## DISCUSSION

I. **Was there sufficient evidence establishing that the victim suffered serious bodily injury?**

[¶8] When reviewing a claim of insufficient evidence,

---

[1] Originally, Mr. Brown was charged under Wyo. Stat. Ann. § 6-2-501(b), (c) (LexisNexis 2013), but the information was later amended to reflect that Mr. Brown was charged pursuant to Wyo. Stat. Ann. § 6-2-501(b), (d).

we review that evidence with the assumption that the evidence of the prevailing party is true, disregard the evidence favoring the unsuccessful party, and give the prevailing party the benefit of every favorable inference that we may reasonably draw from the evidence. We will not reweigh the evidence nor will we re-examine the credibility of the witnesses.

*Mendoza v. State*, 2007 WY 26, ¶ 3, 151 P.3d 1112, 1113 (Wyo. 2007) (quoting *Perritt v. State*, 2005 WY 121, ¶ 9, 120 P.3d 181, 186 (Wyo. 2005)).

[¶9]   Wyo. Stat. Ann. § 6-2-502(a)(i) states, "A person is guilty of aggravated assault and battery if he: . . . Causes or attempts to cause serious bodily injury to another intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." "Serious bodily injury" is defined as a "bodily injury which creates a substantial risk of death or which causes miscarriage, severe disfigurement or protracted loss or impairment of the function of any bodily member or organ." Wyo. Stat. Ann. § 6-1-104(a)(x) (LexisNexis 2013). Mr. Brown argues that the jury was required to unanimously agree on which theory of "serious bodily injury" it relied upon to convict him, and because the jury failed to specify which alternative it relied upon, the State was required to prove each theory separately. As the State failed to establish each of the separate theories of "serious bodily injury," Mr. Brown argues that the verdict must be set aside in accordance with *Tanner v. State*, 2002 WY 170, ¶ 8, 57 P.3d 1242, 1244 (Wyo. 2002).

[¶10] Mr. Brown misapprehends the meaning of *Tanner*. In *Tanner*, the jury was instructed that in order to judge Tanner guilty of burglary, the jury had to find, among other elements, that Tanner acted with "intent to commit larceny or a felony therein." *Tanner*, 2002 WY 170, ¶ 9, 57 P.3d at 1245. The jury then entered a general verdict convicting Tanner, but failing to specify which grounds, intent to commit larceny or intent to commit a felony, it relied upon to come to its decision. *Id.* at ¶ 13, at 1246. We found that because the alternative theories were elements of the crime, the prosecution had the burden to prove, beyond a reasonable doubt, both that Tanner intended to commit larceny and that he intended to commit a felony when a general verdict was returned. *Id.* at ¶ 11, at 1245. The prosecution only presented evidence that Tanner intended to commit larceny, failing to prove that Tanner intended to commit a felony as well. *Id.* at ¶ 16, at 1247. As a result, we reversed Tanner's conviction.

[¶11] In *Miller v. State*, 2006 WY 17, 127 P.3d 793 (Wyo. 2006), we distinguished *Tanner*. In that case, the jury was instructed that to find Miller guilty, it had to determine that Miller "delivered methamphetamine to another individual." *Miller*, 2006 WY 17,

¶ 23, 127 P.3d at 799. The district court then went on to instruct the jury on the definition of "deliver," which means, "actual, constructive, or attempted transfer from one person to another of a controlled substance." *Id.* Miller argued that the instruction defining "deliver" presented an alternative instruction, analogous to "the principles espoused in *Bush v. State*, 908 P.2d 963 (Wyo. 1995)" and its progeny, including *Tanner*. *Id.* at ¶ 24, at 799. We rejected Miller's argument, finding that the instruction only served to define the term "deliver" and did not effectively charge an alternative ground for conviction, as was the case in *Bush* and *Tanner*. *Id.* at ¶ 26, at 800; *see also Anderson v. State*, 2014 WY 74, ¶¶ 35-37, 327 P.3d 89, 99 (Wyo. 2014).

[¶12] In this case, as in *Miller*, Mr. Brown challenges alternatives in a definition, as opposed to alternative elements. The district court instructed the jury that to find Mr. Brown guilty, it was required to determine that the prosecution had proven, beyond a reasonable doubt, that:

    1. On or about the 26th day of January, 2013;

    2. In Natrona County, Wyoming;

    3. The Defendant, Kiyon L. Brown;

    4. Intentionally or knowingly;

    5. Caused serious bodily injury to another person, Jeannie Jacobsen, or attempted to cause serious bodily injury to another person, Jeannie Jacobsen.[2]

The district court went on to define "serious bodily injury" as "bodily injury which creates a substantial risk of death or which causes miscarriage, severe disfigurement or protracted loss or impairment of the function of any bodily member or organ." As in *Miller*, the elements instruction "did not contain alternative elements upon which [Mr. Brown's] convictions could be based." *Miller*, 2006 WY 17, ¶ 26, 127 P.3d at 800. The instruction addressing "serious bodily injury" only served to define one of the terms

---

[2] The verdict form provided two alternatives: (1) that Mr. Brown caused serious bodily injury; and/or (2) that Mr. Brown attempted to cause serious bodily injury. The jury convicted Mr. Brown of causing serious bodily injury, but found that Mr. Brown did not attempt to cause serious bodily injury. The district court also instructed the jury on the two alternative theories, stating, "Because you are being asked to consider these alternative theories propounded by the State, it is a requirement of the law that to convict [Mr. Brown] you must agree unanimously on the basis for a conviction."

4

included in the elements, nothing more. As a result, *Tanner* is inapplicable to the instructions given in this case.

[¶13] Review of the record demonstrates that the State provided extensive evidence establishing that Mr. Brown caused Ms. Jacobsen serious bodily injury as defined by statute. Ms. Jacobsen suffered a broken jaw, and in previous cases, we have upheld the determinations of juries that a broken jaw constitutes serious bodily injury. *O'Brien v. State*, 2002 WY 63, ¶ 25, 45 P.3d 225, 234 (Wyo. 2002); *Trujillo v. State*, 750 P.2d 1334, 1338 (Wyo. 1988). The prosecution also presented testimony that Ms. Jacobsen suffered from scarring and an uneven bite as a result of the injury. Ms. Jacobsen testified that she now has difficulty eating and drinking because of the numbness in her mouth caused by the injury. Finally, the prosecution elicited medical testimony that complications from the broken jaw had the potential to cause blockages to Ms. Jacobsen's airway, and that there was a protracted loss of use of the jaw until it was fully healed. Based on this evidence, the jury could have determined, beyond a reasonable doubt, that Mr. Brown was guilty of the crime for which he was convicted. "We will not second-guess the jury's guilty verdict." *Miller*, 2006 WY 17, ¶ 27, 127 P.3d at 800.

## II.   *Was the jury adequately instructed on the theory of self-defense?*

[¶14] In reviewing jury instructions, we provide the district court with wide latitude in its decisions. *Ewing v. State*, 2007 WY 78, ¶ 8, 157 P.3d 943, 945 (Wyo. 2007) (citing *Wilson v. State*, 14 P.3d 912, 915 (Wyo. 2000)). "We will not find reversible error in a trial court's instructions to the jury unless the instructions do not correctly state the law, or the instructions, taken as a whole, do not sufficiently cover the issues presented at trial." *Id.* (citing *Seymore v. State*, 2007 WY 32, ¶ 9, 152 P.3d 401, 404 (Wyo. 2007)).

[¶15] Mr. Brown argues that the district court failed to adequately instruct the jury on the theory of self-defense. In making this contention, Mr. Brown cites to our recent decision in *Drennen v. State*, 2013 WY 118, 311 P.3d 116 (Wyo. 2013). *Drennen* addressed the theory of self-defense in the context of a homicide. 2013 WY 118, ¶¶ 22-39, 311 P.3d at 124-130. It also provided direction to lower courts concerning the instructions that should be given when self-defense is asserted. *Id.* Mr. Brown failed to address this issue with the district court, and instead raises the argument for the first time on appeal.

> This Court generally does not consider issues raised for the first time on appeal. . . . "Our rule is that in the absence of fundamental error affecting a substantial right of the appellant an issue raised for the first time on appeal will not be

considered." *Davis v. State*, 859 P.2d 89, 94 (Wyo. 1993).
We review those claims not objected to at trial and raised for
the first time on appeal for plain error.

*Belden v. State*, 2003 WY 89, ¶ 55, 73 P.3d 1041, 1090 (Wyo. 2003) (some citations omitted). Mr. Brown argues that *Drennen* had not yet been published at the time of the trial or when the motion for a new trial was filed. Thus, there was no opportunity to bring the *Drennen* decision to the trial court's attention. In fact, the decision was released two weeks before the October 14, 2013 hearing on Mr. Brown's motion for a new trial. *See Drennen*, 2013 WY 118, 311 P.3d at 116 (published October 1, 2013). Mr. Brown had two weeks to amend his motion for a new trial to encompass the relevant portions of *Drennen*. He also had the opportunity to address *Drennen* at oral argument. He failed to do so. As a result, we review his claim for plain error.

[¶16] The district court adequately instructed the jury on self-defense with regard to Ms. Jacobsen.[3] In *Drennen*, we provided step-by-step directions on how the theory of self-defense should be presented to a jury. *Drennen*, 2013 WY 118, ¶ 39, 311 P.3d at 129. A defendant must first present a prima facie case of each element of the affirmative defense before the jury is instructed on the theory, including that the victim acted as the aggressor. *Id.* Only then does the burden shift to the State to prove that a defendant was not acting in self-defense. *Id.*

[¶17] There is no factual basis to find that Ms. Jacobsen acted as the aggressor during the altercation that gave rise to the charge of aggravated battery. Testimony elicited at trial demonstrates that Ms. Jacobsen *may* have punched Mr. Brown in the chest with a key while they were arguing in the kitchen of their shared apartment, but following this confrontation, the parties clearly separated and no further violence was done during the kitchen exchange. It was the subsequent bathroom altercation that led to the charge of aggravated battery against Mr. Brown. Mr. Brown presented no evidence that Ms. Jacobsen was the aggressor. In fact, Mr. Brown admitted that *he* followed Ms. Jacobsen into the bathroom, and that she committed no aggression toward him during that time. Mr. Brown was not entitled to a self-defense jury instruction concerning Ms. Jacobsen as he failed to present a prima facie case that she acted as the aggressor during the bathroom confrontation.[4] The district court did not commit plain error when it instructed the jury.

---

[3] While with respect to Ms. Otto, the evidence did warrant an instruction on the definition of "aggressor" pursuant to *Drennen*, Mr. Brown was acquitted on that charge. Thus, the instructions with respect to Ms. Otto are irrelevant to our current analysis.

[4] Confusingly, Mr. Brown alleges that the district court erred when it failed to include a definition of "aggressor" in the jury instructions; however, in the next paragraph Mr. Brown argues, "there is no reason to confuse a jury with instructions about aggressors."

***III. Did the prosecutor's attempt to elicit sympathy for the victim constitute prosecutorial misconduct that denied Mr. Brown due process of law?***

[¶18] Mr. Brown argues that the prosecutor committed misconduct when he asked the jury to "imagine" themselves in the position of Ms. Jacobsen. Again, Mr. Brown raises this issue for the first time on appeal. (In his motion for a new trial, Mr. Brown alleged prosecutorial misconduct, but for another reason. There, Mr. Brown argued that the prosecutor played on the jury's sympathy by injecting the issue of domestic violence into the case.) Mr. Brown failed to address the "golden rule" argument[5] with the district court that he now presents on appeal. "Our rule is that in the absence of fundamental error affecting a substantial right of the appellant an issue raised for the first time on appeal will not be considered." *Belden*, 2003 WY 89, ¶ 55, 73 P.3d at 1090 (quoting *Davis v. State*, 859 P.2d 89, 94 (Wyo. 1993)). However, "[p]rosecutorial misconduct implicates the right to a fair trial and, as a consequence, due process of law." *Solis v. State*, 2013 WY 152, ¶ 42, 315 P.3d 622, 632 (Wyo. 2013) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974)). Violations of a defendant's Fifth Amendment right to a fair trial amount to fundamental error affecting a defendant's substantial rights. *Belden*, 2003 WY 89, ¶ 55, 73 P.3d at 1090 (citing *Davis*, 859 P.2d at 94); *Earll v. State*, 2001 WY 66, ¶ 9, 29 P.3d 787, 789 (Wyo. 2001) ("The accused's right to a fair trial is a substantial right."). It is, therefore, appropriate to consider Mr. Brown's argument raised for the first time on appeal.

[¶19] Because Mr. Brown failed to object to the prosecutor's statements throughout trial, our review is limited to a search for plain error. *Leiker v. State*, 994 P.2d 917, 918 (Wyo. 1999). The plain error standard requires a defendant to establish that a violation of an unequivocal rule of law occurred. *Montoya v. State*, 971 P.2d 134, 136 (Wyo. 1998). The record must clearly reflect the error, and the violation must result in the "abridgment of a substantial right of the [defendant] to his material prejudice." *Id.*

[¶20] "Golden rule" arguments are widely recognized as improper. *United States v. Palma*, 473 F.3d 899, 902 (8th Cir. 2007); *Grossman v. McDonough*, 466 F.3d 1325, 1348 (11th Cir. 2006); *State v. Long*, 975 A.2d 660, 677 (Conn. 2009); *Mosley v. State*, 46 So.3d 510, 520 (Fla. 2009); *Brown v. State*, 680 S.E.2d 909, 915 (S.C. 2009); *State v. Corbett*, 130 P.3d 1179, 1194-95 (Kan. 2006); *Braithwaite v. State*, 572 S.E.2d 612, 615 (Ga. 2002); *State v. Carlson*, 559 N.W.2d 802, 812 (N.D. 1997); *Puckett v. State*, 918 S.W.2d 707, 711 (Ark. 1996); *Chisolm v. State*, 529 So.2d 635, 639-40 (Miss. 1988); *Lycans v. Commonwealth*, 562 S.W.2d 303, 306 (Ky. 1978). A "golden rule" argument occurs when counsel asks jurors to place themselves in the victim's position. 75A Am.

---

[5] *Black's Law Dictionary* defines the "golden-rule argument" as, "A jury argument in which a lawyer asks the jurors to reach a verdict by imagining themselves or someone they care about in the place of the injured plaintiff or crime victim." *Black's Law Dictionary* 713 (8th ed. 2004).

Jur. *Trial* § 547 (2007). "The golden rule argument is impermissible because it tends to subvert the objectivity of the jury. It is seen as an attempt to dissuade the jurors from their duty to weigh the evidence and instead to view the case from the standpoint of a [victim]." *Puckett*, 918 S.W.2d at 711 (quoting *King v. State*, 877 S.W.2d 583, 586 (Ark. 1994) (citations omitted)).

[¶21] In both his opening and closing statements, the prosecutor repeatedly told the jurors to imagine themselves in the shoes of the victim, Ms. Jacobsen. In his opening statement, the very first sentence spoken by the prosecutor was, "Imagine you just had your mother's funeral, it's January 26th, 2013, and you date [Mr. Brown]." The prosecutor went on asking the jurors to "imagine" themselves in the position of Ms. Jacobsen several more times throughout his opening statement and continued this practice during closing statement. The prosecutor's actions were clearly improper.

[¶22] This, however, is not the end of our inquiry. We must also determine whether Mr. Brown was materially prejudiced as a result of the prosecutor's misconduct. A finding of material prejudice "is not warranted unless a reasonable probability exists that absent the error the appellant may have enjoyed a more favorable verdict." *Haynes v. State,* 2008 WY 75, ¶ 23, 186 P.3d 1204, 1210 (Wyo. 2008) (quoting *Szymanski v. State*, 2007 WY 139, ¶ 27, 166 P.3d 879, 886 (Wyo. 2007)).

> We have established the following non-exhaustive list of factors for evaluating whether material prejudice resulted: 1) the degree to which the prosecutor's remarks had a tendency to mislead the jury and prejudice the accused; 2) whether the remarks were isolated or extensive; 3) the strength of competent proof to establish guilt, absent the remarks; 4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters; 5) the presence or absence of a limiting instruction; 6) whether the error was invited by defense counsel; 7) whether the failure to object could have been the result of tactical decisions; and 8) whether, in light of all the evidence, the error was harmless.

*Id.* at ¶ 40, at 1213 (citing *Trujillo v. State*, 2002 WY 51, ¶ 15, 44 P.3d 22, 28 (Wyo. 2002)). Based on our review of the entire record, we find that Mr. Brown was not materially prejudiced by the prosecutor's statements. *Earll*, 2001 WY 66, ¶ 9, 29 P.3d at 789.

[¶23] The comments made by the prosecutor did not have the effect of misleading the jury. While improper to argue that the jury should be placed in the shoes of the victim, the statements made by the prosecutor were all demonstrated through evidence received at trial.

> [W]here the references to the victim or his or her family are based on the evidence or on facts already known to the jury they are not improper, and it is not improper for the prosecuting attorney to embellish his or her argument with certain oratorical flourishes, even though such argument does not adhere strictly to a mere recital of the evidence, at least where he or she does not introduce a matter which is outside the record or which is solely calculated to arouse the passions of the jury.

75A Am. Jur. *Trial* § 556 (2007).

[¶24] The State produced extensive competent evidence establishing Mr. Brown's guilt, absent any remarks made by the prosecutor. The prosecution established that Mr. Brown struck Ms. Jacobsen causing her jaw to break and inflicting serious bodily injury. Additionally, the trial testimony demonstrated that Ms. Jacobsen was not an aggressor, thereby barring any claim of self-defense by Mr. Brown with respect to Ms. Jacobsen. Moreover, the comments were not designed to divert the jury's attention to extraneous matters. In fact, the intent seems to have been to focus the jury's attention on specific portions of the evidence presented.

[¶25] While there was no instruction specifically limiting the prosecutor's statements, the district court did instruct the jury twice that its decision was not to be ruled by sentiment, conjecture, sympathy, passion or prejudice. The district court also advised the jury, "As to any statement made by counsel in explanation or argument concerning the facts in this case, you must not regard such a statement as evidence[.]"

[¶26] The error was not invited by defense counsel; however, counsel for Mr. Brown failed to object to the prosecutor's argument. Mr. Brown claims that defense counsel failed to object due to tactical considerations. We are unconvinced by this explanation considering that Mr. Brown neglected to address this specific complaint in his motion for a new trial.

9

[¶27]  In light of all the evidence presented, we find that the error was harmless, and that Mr. Brown suffered no prejudice as a result of the comments made by the prosecutor. Mr. Brown has failed to demonstrate that there was a reasonable probability that, absent the "imagine" comments made by the prosecutor, he would have enjoyed a more favorable verdict.  The prosecution introduced testimonial and other evidence establishing Mr. Brown's guilt.  We cannot say that the prosecutor's improper statements so tainted the trial that an alternate verdict would have been reached without them.

[¶28]  Mr. Brown also argues that the prosecutor committed misconduct by attempting to elicit sympathy for Ms. Jacobsen when he injected into the trial facts establishing that Ms. Jacobsen's mother had recently passed away at the time of the altercation.  We find that it was not misconduct for the prosecutor to introduce such evidence.  The death of Ms. Jacobsen's mother furnished background information for the jury in explaining why Ms. Jacobsen's family was staying with Mr. Brown and Ms. Jacobsen.  The evidence also provided a backdrop to show the tensions that had arisen between Ms. Jacobsen and Mr. Brown over the course of the week.  In fact, Mr. Brown testified extensively concerning the surrounding circumstances of the altercation, including the details of the days following the death and how it impacted their relationship.  We find no prosecutorial misconduct occurred with regard to the introduction of evidence on the death of Ms. Jacobsen's mother.

[¶29]  We affirm.